UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WOODYARD, LLC, | No. 2:19-CV-02495-KJM-DB |
| Plaintiff, | |
| v. | ORDER |
| SYAR INDUSTRIES, INC., et al., | |
| Defendants. | |

In this action, plaintiff Woodyard, LLC seeks to recover cleanup costs and damages resulting from alleged environmental contamination of plaintiff's property. Defendant Syar Industries, Inc. moves under Rule 12(b)(6) to dismiss plaintiff's complaint in its entirety. In the alternative, defendant asks the court to order plaintiff to provide a more definite statement under Rule 12(e), laying out the bases for its claims and identifying with specificity the hazardous substance it alleges defendant released. For the reasons below, the court GRANTS defendant's motion to dismiss with leave to amend.

I.   BACKGROUND

In 2016, plaintiff purchased 19389 County Road 102 in Woodland, California (the "property"). Compl. ¶ 1, ECF No. 1. The property was previously owned by Glen A. Barton and Gloria L. Borton, who leased the property to Metro Auto Dismantling and Towing, LLC ("Metro Auto"), to use it as an automotive salvage yard until 2014. Id. ¶ 9.

1

In 2017, plaintiff excavated approximately 6,000 cubic yards of concrete and concrete waste called "washout," which allegedly contains chromium and "other hazardous substances." *Id.* ¶ 10. Plaintiff alleges defendant previously dumped the concrete waste onto the property between January 2008 and April 2010, when Metro Auto operated its salvage yard on the property. *Id.* In addition to the concrete contamination, the complaint alleges the property also had petroleum hydrocarbon contamination, *id.* ¶ 10; however, plaintiff clarified during a meet and confer session with defendant that it seeks to recover only the $600,000 it incurred to remediate the defendant's concrete waste, not the petroleum contamination, *see* Joint Statement, ECF No. 15; Compl. ¶ 10 ("The total cost to Plaintiff to address the contaminated concrete was in excess of $600,000.").

On January 23, 2020, defendant filed the instant motion to dismiss and the court scheduled it for a hearing on April 24, 2020. Mot., ECF No. 8. Plaintiff filed its opposition eleven days late, on April 21, 2020. Opp'n, ECF No. 16.[1] Defendant replied. Reply, ECF No. 23. The court ultimately held a hearing on the motion on June 26, 2020, then submitted the matter, and resolves it here.

II.     MOTION FOR A MORE DEFINITE STATEMENT

If the court does not grant the motion to dismiss, defendant Syar asks the court to order plaintiff to amend the complaint to state clearly which hazardous substance it is alleging defendant released. Mot. at 13. The court addresses this issue first, as it is relevant to the discussion of defendant's motion to dismiss several of plaintiff's claims. In the parties' joint statement certifying meet and confer efforts, plaintiff clarifies: "the Complaint does not presently seek to recover any costs associated with the cleanup of hydrocarbon contamination on the site. Rather, Plaintiff's claims relate to cleanup costs associated with hazardous materials that primarily exist in concrete washout." Joint Statement at 2. The complaint does create some

---

[1] Defendant has not objected to the opposition. *See* Vinding Decl. ¶ 6, ECF No. 18. Plaintiff subsequently filed a declaration from counsel explaining her error in failing to file the opposition on April 10. ECF No. 17. The court accepts counsel's explanation and considers the opposition, while cautioning counsel it will likely not be so lenient regarding future late filings.

confusion by failing to clearly distinguish between concrete and concrete "washout," with this wording:

> Subsequent investigations indicated that drivers from Defendant Syar, Inc. dumped remnant loads of *concrete* (and *washout which contains chromium and other hazardous substances*) from approximately January 2008 through April 2010, during the time the Property was operated by Metro Auto. After waste profiling, the contaminated *concrete* was transported and disposed of at permitted facilities. The total cost to Plaintiff to address the contaminated *concrete* was in excess of $600,000.

Compl. ¶ 10 (emphasis added). It is not clear from this passage whether concrete and "washout" are two separate substances, nor whether the $600,000 clean-up costs are attributed to plaintiff's remediation of both substances or just the concrete. Because the court is prepared to grant defendant's motion to dismiss plaintiff's CERCLA claims with leave to amend, as explained below, defendant's request for a more definite statement is mooted. Nonetheless, plaintiff would be well-advised to clarify its pleading in this respect, in any amended complaint.

III.  MOTION TO DISMISS

    A.  Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss

3

for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  This rule does not apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986) *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001).

      B.     <u>Discussion</u>

           1.     <u>CERCLA § 107(a) Claim (Claim One)</u>

Plaintiff brings a CERCLA claim for recovery of costs against defendant under 42 U.S.C. § 9607(a) (also known as CERCLA § 107), which states, in relevant part:

> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility . . . owned or operated by another party or entity and containing such hazardous substances . . . shall be liable for--
>
> . . . .
>
> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan[.]

42 U.S.C. § 9607(a). To establish a prima facie case for cost recovery under CERCLA, a plaintiff ultimately must show: "(1) the site on which the hazardous substances are contained is a 'facility' under CERCLA's definition of that term, . . . (2) a 'release' or 'threatened release' of any 'hazardous substance' from the facility has occurred, . . . (3) such 'release' or 'threatened release' has caused the plaintiff to incur response costs that were 'necessary' and 'consistent with the national contingency plan,' . . .; and (4) the defendant is within one of four classes of persons

4

subject to the liability provisions of Section 107(a)." *3550 Stevens Creek Assocs. v. Barclays Bank of California*, 915 F.2d 1355, 1358 (9th Cir. 1990) (citation omitted).

Defendant argues plaintiff fails to state a CERCLA claim, because the complaint does not sufficiently plead that defendant released a "hazardous substance" within the meaning of CERCLA. According to defendant, plaintiff alleges only that its response costs were attributed to "hydrocarbon impacted soil intermixed with debris at the property," and petroleum hydrocarbons are excluded under CERCLA. Mot. at 6 (citing Compl. ¶ 10). According to defendant, the complaint does not attribute plaintiff's response costs to any non-petroleum substance. *Id.* Concrete, defendant points out, is not included in CERCLA's list of hazardous substances. *Id.* (citing 42 U.S.C. § 9601(14)).

Contrary to defendant's argument, the complaint does allege that defendant dumped "remnant loads of concrete (and washout which contains chromium and other hazardous substances)" onto the property. Compl. ¶ 10. This pleading is sufficient to put defendant on notice that at least part of plaintiff's CERCLA claim is based on the "chromium and other hazardous substances" contained within the concrete "washout" defendant allegedly dumped on the property. Defendant does not dispute that chromium is a hazardous substance. *See* Mot. at 6. Defendant's motion to dismiss on this basis is DENIED.

Second, defendant argues plaintiff fails to allege a causal link between defendant's release and plaintiff's response costs, because the complaint attributes the petroleum hydrocarbon releases to Metro Auto's activities and not defendant's. Mot. at 7. Here, defendant overstates its argument; on its face, the CERCLA claim in the complaint is based, at least in part, on defendant's dumping of concrete and "washout," as explained above. However, the statement, "[t]he total cost to Plaintiff to address the contaminated concrete was in excess of $600,000," Compl. ¶ 10, does not expressly link plaintiff's remediation costs of $600,000 with the allegedly hazardous substance dumped by defendant, "washout." At best, it links the cost with remediation of "concrete," *see* Reply at 4, as discussed above with respect to defendant's motion for a more definite statement. This pleading is insufficient to support a CERCLA § 107 claim, because the complaint does not allege the requisite causality. *See 3550 Stevens Creek Assocs.*, 915 F.2d at

5

1358.  Any amended complaint should also clarify how defendant's actions caused plaintiff's response costs.  *See* Reply at 4.

Third, defendant argues plaintiff has not pleaded that defendant falls within one of the four classes of persons subject to liability under § 107(a).  Mot. at 7–8 (citing 42 U.S.C. § 9607(a)(1)–(4)).  In response to plaintiff's argument that it adequately pleads "arranger" liability, *see* 42 U.S.C. § 9607(a)(3),[2] defendant points out that such liability requires a showing that defendant had the intent to dispose of a hazardous substance.  *See* Reply at 5 (citing *Burlington Northern and Santa Fe Railway Co. v. United States*, 556 U.S. 599, 611 (2009) (a CERCLA defendant is an arranger when it "takes intentional steps to dispose of a hazardous substance.")).  Though plaintiff may have sufficiently plead the intent requirement as to defendant's dumping of concrete, it has not pleaded defendant intended to dump concrete "washout," which contains the hazardous substance at issue.  *See Heim v. Heim*, No. 5:10-CV-03816-EJD, 2014 WL 1340063, at *9 (N.D. Cal. Apr. 2, 2014) ("[T]o satisfy the intent requirement, the Ninth Circuit expressly stated that the plaintiff must prove the manufacturer entered into the relevant transaction with 'the specific purpose of disposing of a hazardous substance.'" (citation omitted)).

For these reasons, plaintiff's first claim is DISMISSED.

2.      CERCLA §113(f) (Claim Two)

Defendant argues plaintiff is not eligible to bring a CERCLA § 113(f) contribution action, because plaintiff has not established it is liable for response costs under a prior judgment or settlement.  Mot. at 9 (citing *United States v. Atlantic Research Corp.*, 551 U.S. 128 at 139 n.6 (2004)).  The complaint alleges plaintiff initiated the remediation "in the interest of an expeditious cleanup," apparently voluntarily.  Compl. ¶ 14.  Section 113 "provides two express avenues for contribution: § 113(f)(1) ('during or following' specified civil actions) and

---

[2]  42 U.S.C. § 9607(a)(3) provides, in pertinent, that the category of proper defendants includes "any person who by contract, agreement or otherwise arranged for disposal . . . . of hazardous substances owned or possessed by such person, by any other party or entity, at any facility ... owned or operated by another party or entity and containing such hazardous substances[.]"

§ 113(f)(3)(B) (after an administrative or judicially approved settlement that resolves liability to the United States or a State)." *Cooper Indus., Inc. v. Aviall Servs., Inc.,* 543 U.S. 157, 167 (2004). Plaintiff argues that its settlement with the Regional Board, which mandated that it remediate the concrete waste, is sufficient legal ground for a § 113(f) cause of action, "the lack of a formal judgment notwithstanding." Opp'n at 2. However, plaintiff's complaint does not allege any such settlement with the Regional Board, only that the agency was giving "supervision and oversight" to the remediation effort; nor does the complaint allege any other civil action such that § 113(f) would apply. *See* Reply at 7. Plaintiff's second claim is also DISMISSED.

### 3. California's Hazardous Substances Account Act (Claim Three)

California's Hazardous Substance Account Act, Cal. Health & Safety Code section 25300 *et seq.* ("HSAA"), shares the same elements as a CERCLA claim. *Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*, 805 F. Supp. 2d 888, 897 (N.D. Cal. 2011) (citation omitted); *see also* Opp'n at 9. Accordingly, plaintiff's third claim is DISMISSED for the same reasons outlined above.

### 4. Waste (Claim Four)

Defendant argues plaintiff's fourth claim must be dismissed because it is time-barred under California's three-year statute of limitations for waste claims, which commences on "the occurrence of the last element essential to the cause of action." Mot. at 11 (citing Cal. Code Civ. P. § 338(b) (statute of limitations for injury to real property); *Camsi IV v. Hunter Technology Corp.*, 230 Cal. App. 3d 1525, 1533 (1991), *modified on denial of reh'g* (July 2, 1991)). Plaintiff filed the complaint here on December 13, 2019, and alleges defendant committed waste by depositing on the property from January 2008 to April 2010. Compl. ¶ 10. The claim is time-barred unless some exception applies, because "the statute of limitations is tied to the real property and is not renewed when a new owner acquires the land and discovers the injury." *Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*, 805 F. Supp. 2d 888, 902 (N.D. Cal. 2011) (citation omitted).

The statute of limitations can be tolled by operation of the delayed discovery rule, *see id.*, if plaintiff can allege "facts showing that he was not negligent in failing to make the

7

discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry," *Hobart v. Hobart Estate Co.*, 26 Cal. 2d 412, 437 (1945). The knowledge of a previous owner of the property is imputed to subsequent owners for the purpose of the delayed discovery rule. *See Camsi IV*, 230 Cal. App. 3d at 1537 (citing *Bradler v. Craig*, 274 Cal. App. 2d 466, 472 (Ct. App. 1969)).

In support of its argument that the delayed discovery rule should apply, plaintiff points only to the allegation that it discovered the concrete waste when it was "excavated" in 2017, implying the waste was buried until then. Compl. ¶ 10. However, given the allegation that the former operator of the property authorized the dumping of concrete, *id.* ¶ 1, and that no other allegations explain why plaintiff did not discover the waste despite reasonable inquiry, the allegations are insufficient to show plaintiff "was not negligent in failing to make the discovery sooner and that [it] had no actual or presumptive knowledge of facts sufficient to put him on inquiry," even drawing all reasonable inferences in plaintiff's favor. *See Hobart*, 26 Cal. 2d at 437. Accordingly plaintiff's fourth claim is DISMISSED as time-barred.

### 5. Declaratory Relief Claim (Claim Five)

Defendant argues the court should dismiss plaintiff's fifth claim because no other viable claims are presented. For the reasons explained above, plaintiff's claims are not sufficiently pleaded, and therefore plaintiff's fifth claim for declaratory relief is also DISMISSED.

### 6. Equitable Indemnity Claim (Claim Six)

Finally, defendant argues plaintiff's claim for equitable indemnity should be dismissed because plaintiff has not alleged that it is a tortfeasor jointly liable with defendant, and actions for equitable indemnity are only available between joint tortfeasors. Mot. at 13 (citing *Munoz v. Davis*, 141 Cal. App. 3d 420, 425 (1983) ("[U]nless the prospective indemnitor and indemnitee are jointly and severally liable to the plaintiff there is no basis for indemnity.")).

Plaintiff explains that "[a]s plaintiff is liable for the concrete waste due to its role as owner, and defendant is liable for the same concrete waste as the actual entity who deposited it on the land, the parties are jointly and severally liable under CERCLA and HSAA." Opp'n at 10–

8

11.  However, this statement contradicts plaintiff's complaint, which repeatedly states, "Plaintiff did not cause or contribute to the environmental contamination on the Property and denies that it is liable for costs incurred as the result of the alleged release or threatened release of hazardous substances on the Property."  Compl. ¶¶ 14, 15, 18, 19, 27.  Furthermore, as defendant argues, plaintiff does not allege plaintiff has paid a judgment or settlement or that plaintiff is currently a defendant in any relevant action, which is necessary for an equitable indemnity claim.  *See* Reply at 10 (citing, *inter alia*, *Coppola v. Smith*, 935 F. Supp. 2d 993, 1020–21 (E.D. Cal. 2013) ("[A] fundamental prerequisite to an action for partial or total equitable indemnity is an actual monetary loss through payment of a judgment or settlement.").  Plaintiff's equitable indemnity claim is DISMISSED.

IV.  CONCLUSION

All of plaintiff's claims are DISMISSED.  Given the liberal standard for granting leave to amend in this circuit, *Bowles v. Reade,* 198 F.3d 752, 757 (9th Cir. 1999), and that plaintiff has yet to amend its complaint in this case, plaintiff is GRANTED leave to amend all dismissed claims.  Any first amended complaint SHALL be filed within 21 days of the date of this order.  Defendant's motion for a more definitive statement is DENIED as MOOT.

This order resolves ECF No. 8.

IT IS SO ORDERED.

DATED:  August 19, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE